UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **THOMAS A. McCARTNEY** | : | **DOCKET NO. 13-cv-02880** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **DARLENE BURNS, ET AL** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court are two motions relating to the civil suit filed by Thomas McCartney ("plaintiff") pursuant to 42 USC § 1983 against five current and/or former employees of Vernon Correctional Facility. The motions here relate to the four defendants named in the plaintiff's original complaint filed on October 17, 2013 [doc. 1].[1] The first is a Motion for Summary Judgment [doc. 19] filed on February 13, 2015 by defendants Darlene Burns and Leslie James. The second is another Motion for Summary Judgment [doc. 38] filed on August 3, 2015 by defendants Aaron Barbee and Bobby Stanley, adopting the arguments set forth in the first motion and attaching the affidavits of Barbee and Stanley. Defendants also request that plaintiff be assessed costs of the suit, excluding attorney's fees. The plaintiff opposes both motions.

For the reasons stated below, we recommend that the defendants' Motions for Summary Judgment be **GRANTED** and that the plaintiff's claims be **DISMISSED WITH PREJUDICE.** We also recommend that defendants' requests for costs be **DENIED**.

---

[1] A fifth defendant, Heather West, was added by amended complaint on December 12, 2014. Doc. 17. She filed a Motion to Dismiss [doc. 27] with this court, alleging that the statute of limitations had already run on the plaintiff's claim against her. We accept her claim and recommend that the claims against West be dismissed with prejudice. Therefore, if our recommendation for West's motion is also followed, granting the two Motions for Summary Judgment before us here would dispose of the plaintiff's entire suit.

# I.
## BACKGROUND

Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections ("DPSC"). His complaint concerns events that occurred while he was incarcerated at the Vernon Correctional Facility ("VCF"), where all of the defendants were then employed.

### A. *Denial of Medication*

On April 9, 2013, the plaintiff lost his work status and was assigned to a lockdown cell to await a hearing for aggravated disobedience. Doc. 19, att. 2, p. 2. He remained in lockdown through the morning of April 15, 2013, when he was sent to the Huey P. Long Medical Center in Pineville, Louisiana, for treatment of a cut he inflicted to his left wrist that morning. *Id.*; doc. 1, att. 3, p. 28.

Plaintiff states that he cut his wrist after being denied his medication by VCF personnel from April 11 to April 15, 2013. Doc. 17, pp. 5–6. The defendants attach copies of VCF medical logs for April 2013 which show that the plaintiff missed his daily dose of sertraline, an antidepressant, on April 11 and April 14. Doc. 19, att. 11, p. 3. He was prescribed trazodone (an anti-psychotic) as needed/requested and received it on April 13. *Id.* at 1; doc. 1, att. 3, p. 4. Plaintiff disputes the dispense dates from the log, claiming that the record "was received altered" or possibly just "incorrect." Doc. 1, p. 5; doc. 17, p. 6.

Heather West, the VCF medical officer, was charged with preparing medications and corrections officers on-duty were required to dispense them to inmates responding to regular calls for medication. Doc. 19, att. 3, p. 5. These calls were announced over the intercoms so that inmates in lockdown cells could request their medications from corrections officers on duty and receive them "in a timely fashion," according to the inmate policy manual. *Id.* at 5–6. The defendants cite from the VCF inmate policy manual to show that it was the obligation of inmates to be aware of

the times medications were passed out and to respond to their names in order to receive medication. Doc. 19, att. 5, p. 8. However, they add that the plaintiff knew that all of his prescriptions were available to him at all times, including while he was in the lockdown cells. Doc. 19, att. 3, p. 5. They further contend that, outside of the medical officer, other corrections personnel were not allowed to know of a specific inmate's prescriptions. *Id.* The plaintiff alleges that he made multiple requests to the officers on duty on the dates he contends that he was refused his medication.[2] Doc. 1, p. 5; doc. 17, p. 5.

### B. Statements by Stanley

The plaintiff states that as he was being transported to the ambulance following the cut to his wrist, defendant Stanley said to him, "You wanna die, son? 'Cause I'd sure be glad to let you go." Doc. 17, p. 7. The plaintiff claims he is suffering Post-Traumatic Stress Disorder from this incident, but has yet to be diagnosed. *Id.* The plaintiff also alleges that upon his return to VCF, defendant Stanley, in the presence of defendants Burns and James and Officer Joseph Harris, gave the plaintiff a lesson on the proper way to commit suicide by cutting his wrists. *Id.* The plaintiff claims he suffered mental injury as a result of these statements. *Id.* Stanley states that he cannot recall any comments made to the plaintiff on April 15 and denies that he ever gave the plaintiff instruction on how to kill himself. Doc. 38, att. 2, p. 2. The affidavits of the other defendants do not address these incidents.

### C. Use of Administrative Review Procedure

On April 16, 2013, the plaintiff was transferred from VCF to the Elayn Hunt Correctional Center ("EHCC") in St. Gabriel, Louisiana. Doc. 19, att. 3, pp. 1–2. Upon his transfer to EHCC,

---

[2] Plaintiff alleges that defendant James, as captain on duty, was responsible for dispensing medicine on April 10, 11, and 15, 2013, and that defendant Barbee as captain on duty had the same charge for April 12 and 14, 2013. Doc. 1, pp. 4–5. Plaintiff also alleges that he requested medicine from defendant Stanley on April 11 and was denied, and so took it upon himself to get the medicine when he returned from an appointment. *Id.* at 4.

the plaintiff faced disciplinary action for possession of contraband (a razor blade) arising from the self-injury incident and was sentenced to loss of good time and canteen privileges. Doc. 1, att. 3, p. 26. In a form dated April 27, 2013, he appealed this action on the grounds that he had been driven to conceal the razor blade because of being denied his medication. *Id.* at 27. On May 6, 2013, he also submitted a handwritten complaint to the EHCC warden relating to the alleged denial of his medication at VCF, using the Administrative Review Procedure ("ARP").[3] Doc. 19, att. 13, pp. 4–5. This claim was rejected by the warden's office at EHCC on May 14, 2013, on the grounds that it should have been submitted to the warden at VCF. *Id.* at 4. Plaintiff claims that he was unable to do so because he was denied the appropriate forms at EHCC. Doc. 22, att. 1, p. 2. He also claims that he submitted a handwritten complaint to VCF in lieu of an ARP form on May 8, 2013, but received no response. Doc. 17, p. 2. He does not attach any proof of this submission.[4]

Defendant Burns contends that ARP forms are readily available to inmates when they transfer to other Louisiana DPSC facilities. Doc. 19, att. 3, p. 4. She also states that the only record of plaintiff's use of the ARP is from the letter which he erroneously submitted to the warden at EHCC to complain about denial of his medication at VCF. Doc. 19, att. 2, p. 5. This statement is supported by the affidavit of a DPSC employee with knowledge of inmate records and by the absence of any properly filed ARP in the plaintiff's inmate record. Doc. 19, att. 13, pp. 1–5 (affidavit of Rhonda Weldon); *see* doc. 19, atts. 9 & 10 (inmate general population file); doc. 19, att. 15, pp. 1–3 (deposition of Nicole Walker, who provided the inmate file).

---

[3] According to the VCF inmate policy manual, the ARP is intended for use when "all other ways of solving the complaint have failed," and is meant for situations where "a policy, condition, or incident at V.C.F. affects [an inmate] personally." Doc. 19, att. 6, p. 36. Inmates must complete the form and turn it into the shift captain within 30 days of a grievance, reserving one copy for their own records. *Id.*

[4] Plaintiff stated in his amended complaint that he had attached a copy of the communication to VCF from May 8, 2013, but there were no attachments to that filing, the original complaint, or the plaintiff's response to the Motion for Summary Judgment. Doc. 17, p. 2; *see* docs. 1, 17, and 22 and attachments. Mail records from EHCC are redacted and only show that a document was either sent or received by the plaintiff on May 15 or May 16, 2013. Doc. 68, att. 1, p. 13.

Finally, on June 24, 2013, plaintiff also submitted a complaint to the Assistant Secretary of Adult Services of the DPSC related to the denial of his medication. Doc. 1, att. 3, p. 30–31. He states that there was no response to this letter. Doc. 17, p. 2. His record does not contain any evidence of the letter or a response. Doc. 19, att. 13, pp. 1–5.

## II.
### LEGAL STANDARDS

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*.

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law. *Celotex Corp.*, 106 S.Ct. at 2553. There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511.

## III.
### LAW & ANALYSIS

Federal law provides for a claim against any person who, under the color of state law, acts to deprive another person of his constitutional rights. 42 U.S.C. § 1983. A cognizable § 1983 claim requires a showing that (1) a constitutional right has been violated and (2) the conduct complained of was committed by a state actor. *West v. Atkins*, 108 S.Ct. 2250, 2254–55 (1988). Therefore, we will first investigate the plaintiff's claims for constitutional violations. If we find that a constitutional violation has occurred, we will then determine whether it was attributable to a state actor.

We construe from the plaintiff's allegations two specific claims: inadequate medical care and cruel and unusual punishment arising from the statements he alleges from defendant Stanley. In return, defendants deny all allegations and raise as an affirmative defense that plaintiff has failed to exhaust the appropriate grievance procedures.

### A. *Failure to exhaust*

Defendants claim that the action here is barred because the plaintiff failed to exhaust the administrative remedies at his disposal before filing suit.

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), inmates must properly exhaust available administrative remedies before filing a § 1983 claim relating to prison conditions. *Dillon v. Rogers*, 596 F.3d 260, 265 (5th Cir. 2010) (internal citations omitted). In Louisiana, the state ARP requires that a grievance first be sent in writing to the warden of the facility where the alleged offense occurred. LA. ADMIN. CODE tit. 22, § 325(G)–(J). The warden is required to process the complaint within 40 days. *Id.* at § 325(J)(1)(a). If it is not handled to the inmate's satisfaction, he may appeal in writing to the secretary of the DPSC. *Id.* at § 325(J)(1)(b).

When the appeal is answered or the 45 days have passed, whichever comes first, an inmate is deemed to have exhausted his administrative remedies and may file suit in district court. *Id.*; *Dillon*, 596 F.3d at 265–66. However, "[i]f the inmate believes the complaint is sensitive and would be adversely affected if it became known at [the] institution," he may skip the first step and address his complaint to the DPSC through the chief of operations or Office of Adult Services. *Dillon*, 596 F.3d at 266; LA. ADMIN. CODE tit. 22, § 325(H)(1)(b). The chief of operations or Office of Adult Services conducts a review and handles the matter if it agrees that the complaint is of a sensitive nature. LA. ADMIN. CODE tit. 22, § 325(H)(1)(b). Otherwise, the inmate must proceed through the first step with a complaint to the warden. *Id.* Under the PLRA, failure to exhaust is an affirmative defense. *Jones v. Bock*, 127 S.Ct. 910, 921–922 (2007). The burden is thus on the defendants to establish the defense in order to achieve summary judgment on that basis. *Dillon*, 596 F.3d at 266 (5th Cir. 2010).

Here the plaintiff and defendants do not dispute that the plaintiff first sent a complaint to the warden at EHCC, which was rejected because the complaint related to an incident at VCF. Plaintiff claims that he next sent a complaint to VCF, but there is no evidence to support this contention. Plaintiff does attach a copy of the letter he allegedly sent to the Office of Adult Services. As the plaintiff would need a response from the Office of Adult Services to know whether he was still required to submit his complaint to the warden, the issue of whether a response was ever received is a material one. The defendants have not made an adequate showing that a response was received or that the letter was never submitted in the first place. Therefore, we reject the affirmative defense that the plaintiff failed to exhaust the administrative remedies at his disposal before filing this action.

### B. *Denial of medical care*

Medical care claims asserted by convicted prisoners are analyzed under the Eighth Amendment's prohibition on cruel and unusual punishment. In order to show a constitutional violation relating to their medical care, convicted prisoners must establish that the refusal or delay in providing care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 97 S.Ct. 285, 292 (1976). Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458–59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459.

Here, the plaintiff alleges that he was denied adequate medical care when defendants failed to give him his prescribed medication on April 11 through April 15. He also alleges that the medication logs were altered or at least incorrect. Defendants refute this in their response by showing through their affidavits and the inmate policy manual that medication was made available to inmates on a regular basis each day. They also offer as evidence the log, which shows that the plaintiff only missed his daily dose of sertraline on April 11 and April 14, and that he received his as-needed/requested dose of trazodone on April 13. Defendants, who claim that all corrections officers with the exception of the medical officer were barred from knowing an inmate's

prescription information, further contend that any missed doses were as a result of the plaintiff's decision not to take his medicine that day rather than being denied his medicine by anyone at VCF. In response, the plaintiff does not offer any other evidence but merely restates his allegations.

Under the standards of summary judgment review, it is plain that the defendants have met their burden on this claim. They show through affidavit and documentary evidence that there is no genuine issue of material fact here because the plaintiff did in fact receive medication on some of the days he claims it was denied. Furthermore, the plaintiff has not provided any evidence to support the contention that any medication he did not receive was due to the defendants' fault. Indeed, the plaintiff offers nothing more than a restatement of his allegations, which are unsupported by any evidence that would be admissible at trial. Under the deliberate indifference test set out above, defendants are entitled to judgment as a matter of law because there remain no facts in issue from which we could infer deliberate indifference on the part of the defendants to a serious medical need of the plaintiff.

Therefore the defendants' motion for summary judgment should be granted as to the plaintiff's claim of inadequate medical care.

C. *Stanley's statements*

Allegations of cruel and unusual punishment under the Eighth Amendment from words alone have been met with significant skepticism. Conduct by a state official might be malicious and even actionable under state tort law, but proving a constitutional violation for the sake of invoking § 1983 is a much higher bar. *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981), *abrogated on other grounds by Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993)). Threatening language and gestures of corrections officers against inmates have not yet met this bar.[5] *McFadden*

---

[5] The Fifth Circuit held that a prisoner's § 1983 claim of excessive force did not include a constitutional violation when he alleged that twenty-two corrections officers compelled him "through an intimidating show of force" to shave

*v. Lucas*, 713 F.2d 143, 146–47 (5th Cir. 1983); *see also Robertson v. Plano City of Tex.*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973) (use of words, "no matter how violent," is not actionable under § 1983) (other internal citations omitted).

Defendant Stanley denies in his affidavit that he made the statements instructing plaintiff on how to commit suicide and telling plaintiff that he would be glad to "let him go." However, he also cites to *McFadden* in support of the proposition that these words alone would not suffice for a § 1983 claim.[6]

In both *McFadden* and the present case, the plaintiffs were outnumbered by corrections officers (in the former case by a show of 22 officers, armed with sticks, to one inmate) and urged to do something highly objectionable. 713 F.2d at 145–46. In *McFadden*, the corrections officers succeeded in making the plaintiff shave his beard, contrary to his religious beliefs. *Id.* However, as discussed above, the court remained firm in the principle that this showing, in the absence of actual physical harm, was not sufficient for a § 1983 claim. *Id.* at 146–47. Although the Fifth Circuit has since retreated from the absolute principle outlined in *McFadden*, the facts in the case before us do not rise to the same level of force or intimidation shown in the recognized exceptions to the physical injury requirement. *See* note 5, *infra*.

---

the beard he wore for religious reasons because the plaintiff was not actually physically assaulted. *McFadden v. Lucas*, 713 F.2d 143, 146–47 (5th Cir. 1983). Though the court in *McFadden* cited with approval several holdings from other circuits noting that "mere threatening language and gestures" by corrections officers did not amount to constitutional violations, the Fifth Circuit noted later that "[we do] not here determine whether or not some type of physical injury will in *every* instance be necessary for section 1983 liability in a use of excessive force claim." *Id.* at 146 (quoting *Coyle v. Hughes*, 436 F.Supp. 591, 593 (W.D.Okl. 1977)); *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1229 (5th Cir. 1988) (emphasis in original). However, the recognized limitations still involve cases where guns were brandished or fired or the plaintiff was restrained for an extended period of time. *E.g.*, *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998); *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir. 1986); *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303 (5th Cir. 1987). Meanwhile, the Fifth Circuit determined that an officer waving a gun in a plaintiff's face did not satisfy a constitutional violation based on excessive force. *Hinojosa*, 834 F.2d at 1229–31.

[6] Defendant Stanley also contends that his alleged words do not rise to the level of any state law claims. The plaintiff cites no statutes or precedents to support specific causes of action against Stanley related to these statements. Given that the plaintiff's original complaint is titled "Prisoner Civil Rights Under 42 U.S.C. § 1983," we confine our interpretation of his claims to that statute and decline to address any state law issues.

Stanley meets his burden as summary judgment movant because, though he and the plaintiff dispute whether the statements were made, jurisprudence shows that, even if made, those statements would not entitle the plaintiff to relief under § 1983.

The motion for summary judgment as it relates to statements allegedly made by Stanley should therefore be granted.

### D. Requests for Costs

The defendants also request that the plaintiff be assessed costs, not including attorney's fees, incurred from the plaintiff's claims.

Under the Federal Rules of Civil Procedure, costs (not including attorney's fees) in a judgment should be awarded to the prevailing party unless barred by some other statute. FED. R. CIV. P. 54(d)(1). For plaintiffs proceeding in forma pauperis, "judgment may be rendered for costs . . . as in other cases" at the court's discretionary power, subject to the limitation that only the plaintiff and not the government will not be liable for any of the costs incurred. 28 U.S.C. § 1915(f); *see also Moore v. McDonald*, 30 F.3d 616, 621 (5th Cir. 1994). An award of costs is not limited to findings of frivolity. *E.g.*, *Lay v. Anderson*, 837 F.2d 231, 232 (5th Cir. 1988). However, we recognize its punitive effect and decline to exercise it here without a greater showing of bad faith or abuse of process from the plaintiff. It is therefore recommended that the requests for costs be denied.

### IV.
#### RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the defendants' motions [doc. 19 & doc. 38] for summary judgment be **GRANTED** and that the action be **DISMISSED WITH PREJUDICE.** It is also **RECOMMENDED** that the defendants' requests for costs be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429-30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 13th day of October, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE